## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:25-cv-01527 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| MOOD MEDIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Mood Media, LLC ("Mood Media" or "Defendant") for infringement of United States Patent Nos. 10,360,571 (the "'571 Patent"), 10,853,825 (the "'825 Patent"), 12,039,550 (the "'550 Patent"), 11,042,890 (the "'890 Patent"), 11,301,880 (the "'880 Patent"), 11,049,120 (the "'120 Patent"), and 12,026,731 (the "'731 Patent") (collectively the "Asserted Patents").

## THE PARTIES

1.    Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.    Upon information and belief, Defendant Mood Media is a company organized and existing under the laws of Delaware.  Mood Media is registered to do business in the State of Texas, with an office at 2100 S. IH 35 Frontage Rd., Suite 201, Austin, TX 78704, and may be served with process through its registered agent at Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin TX 78701.

## JURISDICTION AND VENUE

3.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.     This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.     Mood Media is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and, on information and belief, in the Western District of Texas ("District"), including conduct giving rise to this action.

6.     Mood Media has conducted and does conduct business within the State of Texas.

7.     Mood Media has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.     This Court has personal jurisdiction over Mood Media at least because Mood Media has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Western District of Texas. Mood Media, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.     This Court likewise has personal jurisdiction over Mood Media at least because, on information and belief, Mood Media has committed acts within this District giving rise to this

action and has established minimum contacts with this forum such that the exercise of jurisdiction over Mood Media would not offend traditional notions of fair play and substantial justice. Mood Media is also registered to do business in the State of Texas and maintains an office in this District.

10.     This Court has specific personal jurisdiction over Mood Media in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Mood Media's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because Mood Media resides in this District as it maintains a regular and established place of business in this District at 2100 S. IH 35 Frontage Rd., Suite 201, Austin, TX 78704.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

12.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

13.     At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

14.    Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

15.    Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

16.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

17.    The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

18.    The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

19.    The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

20.    The '571 Patent is valid and enforceable.

21.    The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

22.     The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

23.     The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



*FIG. 1*



*FIG. 2*

24.     The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

25.     Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein
    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices;
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,
    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,
    (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,
(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,
(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons

who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

    (ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

    (iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '825 PATENT

26.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,853,825 (the "'825 Patent") titled "Method for monitoring and analyzing behavior and uses thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '825 Patent is attached to this Complaint at Exhibit B.

27.    The '825 Patent issued from U.S. Patent Application No. 16/509,343 filed on August 4, 2020.

28.    The '825 Patent is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

29.    The Patent Office issued the '825 Patent on December 1, 2020, after a full and fair examination.

30.    The '825 Patent is valid and enforceable.

31.     The '825 Patent introduces a novel method for monitoring and analyzing consumer behavior in real-time to enhance sales through engaging digital customer experiences.

32.     The '825 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and personalized engagement strategies.

33.     The inventors of the '825 Patent recognized a significant gap in the ability of brick-and-mortar retail stores to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method that bridges this gap by utilizing advanced technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies accordingly.

34.     The '825 Patent provides several advantages over the prior art, such as real-time customer monitoring and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.

35.     The '825 Patent describes and claims a specific method incorporating information monitoring devices to gather and analyze data collected by tracking the demographic and tracking characteristics of customers to generate a real-time analysis, which is then used to communicate with sales associates for personalized customer interaction.

36.     Claim 1 of the '825 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a first person in a group of persons at a retail store, wherein

> (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,
>
> (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
>
> (iii) the one or more information monitoring devices comprise one or more video image devices,
>
> (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the first person using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the first person, approximate age of the first person, and combinations thereof, and
>
> (v) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the first person, wherein the tracking characteristic of the first person is selected from a group consisting of movement of the first person relative to the one more information monitoring devices, eye movement of the first person tracked by the one or more video image devices, and combinations thereof;

(b) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the first person to generate a real time analysis of the first person, wherein the analyzed information comprises the demographic characteristic of the first person and the tracking information of the first person;

(c) utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and

(d) sending a communication to the sales associate that comprises at least a portion of (A) the information gathered by the information monitoring devices, (B) the real time analysis, or (C) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## THE '550 PATENT

37.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit C.

38.    The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

39.    The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

40.    The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

41.    The '550 Patent is valid and enforceable.

42.    The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real time—leveraging technologies such as MAC-address tracking, eye tracking, object recognition of goods on shelves, open APIs, and an advertising broker rules engine—to drive sales via engaging, personalized digital customer experiences.

43.    The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and personalized outreach strategies.

44.    The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

45.    The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver on-the-spot, personalized outreach via interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.

46.    The '550 Patent describes and claims a specific system architecture that includes information monitoring devices (e.g., MAC tracking, eye tracking, object identification technologies) to gather and analyze real-time behavioral and demographic data, which then drives interactive outputs like demographic-aware displays, assistance prompts at shelves, and purchase facilitation.

47.    Claim 1 of the '550 Patent reads:

1. A method comprising:
(a) obtaining an information analysis about the shopping activities of a plurality of persons, wherein,
  (i) the information analysis is an analysis of gathered information by one or more information monitoring devices about shopping activities of a plurality of persons,
  (ii) the gathered information comprises gathered traffic information of the plurality of persons, wherein the gathered traffic information comprises traffic information gathered by at least one of the one or more information monitoring devices, and
  (iii) the gathered information further comprises gathered product interaction information of the plurality of persons, wherein
    (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more information monitoring devices, and
    (B) the product interaction information is based upon type of interactions the persons had with one or more products, and
  (iv) the gathered information further comprises gathered object identification information, wherein
    (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and
    (B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;

(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein

    (i) the brand entity is an entity that provides one or more brand products to one or more brick-and-mortar retails store; and,

(c) enhancing the in-store shopping experience of the customers of the one or more brick-and-mortar retail stores by an experience from the brand entity selected from the group consisting of

    (i) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer using one or more displays and content of the engagement being displayed on the one or more displays is selected based upon the information analysis and based upon the one or more brand products,

    (ii) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer by a second person at the brink-and-mortar retail store who can directly interact with the customer based upon (A) the information analysis received by the second person by an electronic communication sent to the second person by a system at the brink-and-mortar retail store and (B) based upon the one or more brand products,

    (iii) provision of marketing or advertising information directed to the customer based upon the analyzed information and based upon the one or more brand products, wherein the marketing or advertising information is received by the customer through a display at the one or more brick-and-mortar retail stores or by receiving the marketing or advertising information on a mobile device of the customer, and

    (iv) provision of a coupon directed to the customer based upon the analyzed information, wherein the coupon is received by the customer either as a printed out coupon or as a digital coupon.

## THE '890 PATENT

48.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit D.

49.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

50.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

51.     The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

52.     The '890 Patent is valid and enforceable.

53.     The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

54.     The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

55.     The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1



*FIG. 2*

56. The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

57. Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein
    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and
    (iii) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering object identification information of a product that the person is interested in purchasing, and
        (B) gathering sentiment information of the person with respect to the product;
(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information
  gathered by the information monitoring devices, wherein the response is
  selected from a group consisting of
  - (i) sending a communication to the person directing the person to a
    location in the retail store at which the person can interact with the
    product,
  - (ii) engaging the person based upon the product, wherein the engaging is
    performed using one more displays and content being displayed on the
    one or more displays is selected based upon the product,
  - (iii) sending a communication to a second person in the retail store who
    can then in real time interact with the person regarding the product,
  - (iv) providing marketing or advertising information to the person in real
    time based upon the product, wherein the marketing or advertising
    information is either product to the person by a display at the retail
    store or by sending the marketing or advertising information to a
    mobile device of the person, and
  - (v) providing a coupon to the person in real time based upon the product,
    wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

58.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and

Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880

Patent") titled "Method And System For Inventory Management In A Retail Store," including the

right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent

is attached to this Complaint at Exhibit E.

59.     The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April

1, 2020.

60.     The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11,

2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

61.     The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair

examination.

62.     The '880 Patent is valid and enforceable.

63.     The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

64.     The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

65.     The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

66.     The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.



FIG. 1



FIG. 2

67.     The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

68.     Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
    (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,
    (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

17

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

(A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

(B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

(ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

(iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

(iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## THE '120 PATENT

69.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,049,120 (the "'120 Patent") titled "Method And System For Generating A Layout For Placement Of Products In A

Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '120 Patent is attached to this Complaint at Exhibit F.

70.    The '120 Patent issued from U.S. Patent Application No. 16/837,577 filed on April 1, 2020, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

71.    The Patent Office issued the '120 Patent on June 29, 2021, after a full and fair examination.

72.    The '120 Patent is valid and enforceable.

73.    The '120 Patent introduces a novel system for tracking customer movement and for optimizing the layout of products provided within a retail store setting.

74.    The '120 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring and analyzing consumer behavior in the retail store in order to better optimize the layout of product available within the store using that information and analysis thereof. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

75.    The inventors of the '120 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the layout of products within the retail store using behavior information from consumers. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing updated store layout suggestions by analyzing that information in order to enhance realized purchases and revenues from shoppers.

76.    The '120 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the layout of products available in the store.



FIG. 1



FIG. 2

77.    The '120 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and generate improved store layouts utilizing data analysis.

78.    Claim 1 of the '120 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
     (i) the retail store has a first layout of products within and about the retail store,
     (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,
     (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,

(iv) the one or more information monitoring devices comprise one or more video image devices,

(v) the step of gathering information using the one or more information monitoring devices comprises

    (A) gathering traffic information of the persons within and about the retail store, wherein the traffic information comprises (I) tracking movement of the persons relative to the one or more information monitoring devices, (II) identification of one or more stops that the persons make within and about the retail store, and (III) tracking position and duration of stop of the persons for each of the one or more stops,

    (B) gathering product interaction information based upon type of interactions the persons had with one or more products in the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products are viewed by the persons at each of the one or more stops, (II) the one or more products are picked up by the persons at each of the one or more stops, (III) the one or more products are carried away by the persons at each of the stops, and (IV) combinations thereof, and

    (C) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information gathered by the information monitoring devices about the shopping activities of the plurality of persons to generate a layout analysis, wherein the analyzed information comprises the tracking information, the product interaction information, and the object identification information; and

(c) utilizing the layout analysis to modify the first layout to generate a second layout of the products within and about the retail store.

## **THE '731 PATENT**

79.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731 Patent") titled "Method For Personalized Marketing And Advertising Of Retail Products," including the right to sue for all past, present, and future infringement. A true and correct copy of the '731 Patent is attached to this Complaint at Exhibit G.

80.    The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed on January 23, 2023.

81.    The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1, 20022.

82.    The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair examination.

83.    The '731 Patent is valid and enforceable.

84.    The '731 Patent introduces a novel method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location.

85.    The '731 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of delivering personalized marketing and advertising tied to in-store behavior and purchase activity. The patent provides innovative solutions for enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

86.    The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

87.    The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

88.     The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

89.     Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:
(a) obtaining an information analysis about the shopping activities of the person, wherein,
    (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,
    (ii) the gathered information comprises gathered product interaction information of the person, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and
        (B) the product interaction information is based upon shopping by the person of one or more first products,
(b) tracking the person using one or more second information monitoring devices to determine the location of the person;
(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises
    (i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and
    (ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of
        (A) a product communication of marketing or advertising information regarding the product,
        (B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,
        (C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,
        (D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and
        (E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## MOOD MEDIA

90.    Mood Media is an international experiential media solutions company focused on transforming physical spaces through immersive digital media, sound, scent, and audiovisual technology. It emphasizes research and innovation in emerging disciplines—including digital signage, scent marketing, and in-store media advertising in the convergence of technology and customer experience. With a base of operations spanning over 500,000 locations in more than 140 countries and reaching over 165 million consumers daily, Mood Media leverages its global footprint to provide scalable environments that adapt to brand identity and customer expectations.

91.    Mood Media continuously introduces new capabilities in digital integration, content creation, audience measurement, and automation. Recent announcements—such as their AI-Powered Audio Messaging CoPilot and enhanced retail media platforms—reflect their commitment to emerging technologies like artificial intelligence, data analytics, and programmatic in-store media solutions.

92.    Mood Media's stated goals align closely with automating business processes, improving operational efficiencies, scaling for future business growth, and enriching the customer experience. Their solutions—such as audio and digital signage systems, messaging platforms, scent branding, and AV integration.

93.    Mood Media's IoT Sensors, Beacon Technology, Smart Digital Shelving, Machine Learning Algorithms, and Digital Signage products comprise the "Accused Products" that infringe the Asserted Patents in this case.

94.    The Accused Products are described as operating in various industries including retail:

## INTRODUCING LIFT & LEARN

In addition to Smart Digital Shelving, take customer engagement to the next level with Mood Lift & Learn. This innovative digital application features in-store digital screens that display specific promotional content whenever the associated product is lifted from a shelf. Sit the item down and pick up a new item, and the content changes as the item in hand changes. It's the innovative way to drive sales and elevate the Customer Experience.

- Captivate your customers and inspire purchase decision
- Increase dwell time
- Leverage customized integration
- Gain valuable engagement insights

https://moodmedia.com/en/sight/smart-digital-shelving/

95.    The Accused Products are further described:

### WHY SMART DIGITAL SHELVING FROM MOOD?

- End-to-end, plug & play, retail-ready solution: content, screens, installation and ongoing 24/7 service and support from one single provider
- Simple-to-use content creation and content management system
- Ability to update in real time
- Durable, elegant and easy-to-clean aluminum construction and hardened protective glass for the demanding retail environment
- Optical sensors can deliver customized content based on gender, age or mood
- Fits any standard 2, 3 or 4 feet retail gondola
- Easy WiFi or IP connection and simple one-source power supply
- Lifts sales while reducing operational costs of traditional printed POS
- Operates from one singular, all-in-one Mood Brand Experience Platform when bundled with in-store music, messaging or any other Mood audio/visual solution

https://moodmedia.com/en/sight/smart-digital-shelving/

96.    The Accused Products practice the patented systems and methods of the Asserted Patents.

97.    Mood Media has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this complaint.

98.     The financial gains accrued by Mood Media through the use of Alpha Modus's patented technology have been substantial, providing Mood Media with competitive advantages in the retail market.

99.     The benefits reaped by Mood Media through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

100.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Mood Media, which has led to significant commercial gains for Mood Media at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '571 PATENT)

101.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

102.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including the Accused Products.

103.    The Accused Products utilize one or more information monitoring devices, including video image devices, to gather information about persons at a location, specifically in Mood Media's customer's retail stores.

104.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

105.   The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in stores.

106.   The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

107.   Mood Media has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

108.   The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

109.   Mood Media's infringing activities are and have been without authority or license under the '571 Patent.

110.   As a direct and proximate result of Mood Media's infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

111.   Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '571 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

112.   Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

113.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

114.    Therefore, Mood Media's infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

115.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

116.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

117.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

118.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '571 Patent.

119.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

120.    Mood Media's knowledge of the '571 Patent, combined with its ongoing use of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

121.    Mood Media's actions and the manner in which the Accused Products are used by Mood Media's customers, consistent with Mood Media's promotions and instructions, demonstrate Mood Media's specific intent to induce infringement of the '571 Patent.

122.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '571 Patent.

123.    As a direct and proximate result of Mood Media's induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

124.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '825 PATENT)

125.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

126.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '825 Patent, including the Accused Products.

127.    The Accused Products embody a method for monitoring and analyzing consumer behavior, including through the use of digital display systems, sensors, and data analytics tools that capture and process consumer interactions in retail environments.

128.    The Accused Products include systems operably connected to one or more servers and databases, which execute computer-executable instructions to monitor consumer activity, track interactions with products, and analyze collected behavioral information.

129.    The Accused Products collect information about consumer movement, product interaction, and related behavioral metrics, which are used to generate insights into consumer shopping patterns.

130.    The Accused Products use the collected information to provide personalized content, marketing, and recommendations to consumers based on their monitored behavior and interactions within the retail store.

131.    Mood Media has directly infringed the '825 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '825 Patent.

132.    The Accused Products satisfy each and every element of the asserted claim of the '825 Patent either literally or under the doctrine of equivalents.

133.    Mood Media's infringing activities are and have been without authority or license under the '825 Patent.

134.    As a direct and proximate result of Mood Media's infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

135.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '825 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

136.    Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '825 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

137.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '825 Patent, despite its knowledge and understanding that its products and systems infringe the '825 Patent.

138.    Therefore, Mood Media's infringement of the '825 Patent is willful and egregious, warranting an enhancement of damages.

139.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '825 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

### (INDUCED PATENT INFRINGEMENT OF THE '825 PATENT)

140.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

141.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '825 Patent, at least as early as the filing of this Complaint, because it knowingly

induces, aids, and directs others to use the Accused Products in a manner that infringes the '825 Patent.

142.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '825 Patent.

143.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '825 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '825 Patent.

144.    Mood Media's knowledge of the '825 Patent, combined with its ongoing use of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '825 Patent.

145.    Mood Media's actions and the manner in which the Accused Products are used by Mood Media's customers, consistent with Mood Media's promotions and instructions, demonstrate Mood Media's specific intent to induce infringement of the '825 Patent.

146.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '825 Patent.

147.    As a direct and proximate result of Mood Media's induced infringement of the '825 Patent, Alpha Modus has suffered and will continue to suffer damage.

148.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '550 PATENT)

149.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

150.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '550 Patent, including the Accused Products.

151.    The Accused Products embody a system for monitoring and analyzing consumer behavior and product interaction information in a retail store setting, as claimed in the '550 Patent.

152.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '550 Patent.

153.    The functions include gathering and analyzing information from information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer demographic or behavioral data, and generating personalized marketing or promotional content based on the collected information.

154.    Mood Media has directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550 Patent.

155.    The Accused Products satisfy each and every element of the asserted claim of the '550 Patent either literally or under the doctrine of equivalents.

156.    Mood Media's infringing activities are and have been without authority or license under the '550 Patent.

157.    As a direct and proximate result of Mood Media's infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

158.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '550 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

159.    Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

160.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '550 Patent, despite its knowledge and understanding that its products and systems infringe the '550 Patent.

161.    Therefore, Mood Media's infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

162.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '550 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## <u>COUNT VI</u>

## <u>(INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)</u>

163.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

164.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '550 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '550 Patent.

165.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '550 Patent.

166.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '550 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '550 Patent.

167.    Mood Media's knowledge of the '550 Patent, combined with its ongoing use of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '550 Patent.

168.    Mood Media's actions and the manner in which the Accused Products are used by Mood Media's customers, consistent with Mood Media's promotions and instructions, demonstrate Mood Media's specific intent to induce infringement of the '550 Patent.

169.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '550 Patent.

170.    As a direct and proximate result of Mood Media's induced infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

171.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

172.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

173.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

174.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

175.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

176.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

177.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

178.    Mood Media has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

179.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

180.    Mood Media's infringing activities are and have been without authority or license under the '890 Patent.

181.    As a direct and proximate result of Mood Media's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

182.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '890 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

183.    Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

184.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

185.    Therefore, Mood Media's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

186.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

187.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

188.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

189.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '880 Patent.

190.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

191.    Mood Media's knowledge of the '890 Patent, combined with its ongoing use of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

192.    Mood Media's actions and the manner in which the Accused Products are used by Mood Media's customers, consistent with Mood Media's promotions and instructions, demonstrate Mood Media's specific intent to induce infringement of the '890 Patent.

193.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '890 Patent.

194.    As a direct and proximate result of Mood Media's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

195.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT IX

## (DIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

196.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

197.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

198.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

199.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

200.    Mood Media's customer's retail stores include a plurality of products stocked within the stores.

201.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

202.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering

object identification information for the products that the persons interacted with during the product interactions.

203.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

204.    Mood Media has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

205.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

206.    Mood Media's infringing activities are and have been without authority or license under the '880 Patent.

207.    As a direct and proximate result of Mood Media's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

208.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '880 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

209.    Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

210.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

211.    Therefore, Mood Media's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

212.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

213.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

214.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent , at least as early as January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

215.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '880 Patent.

216.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

217.    Mood Media's knowledge of the '880 Patent, combined with its ongoing use of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent.

218.    Mood Media's actions and the manner in which the Accused Products are used by Mood Media's customers, consistent with Mood Media's promotions and instructions, demonstrate Mood Media's specific intent to induce infringement of the '880 Patent.

219.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '880 Patent.

220.    As a direct and proximate result of Mood Media's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

221.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XI

## (DIRECT INFRINGEMENT OF THE '120 PATENT)

222.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

223.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '120 Patent, including the Accused Products.

224.    The Accused Products embody a method for gathering information about shopping activities of a plurality of consumer utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '120 Patent.

225.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '120 Patent.

226.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

227.    The Accused Products generate layout information about the retail store and use the information gathered by the system in order to make recommendations to improve the layout of products in the store.

228.    Mood Media has directly infringed the '120 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '120 Patent.

229.    The Accused Products satisfy each and every element of the asserted claim of the '120 Patent either literally or under the doctrine of equivalents.

230.    Mood Media's infringing activities are and have been without authority or license under the '120 Patent.

231.    As a direct and proximate result of Mood Media's infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

232.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '120 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

233.    Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '120 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

234.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '120 Patent, despite its knowledge and understanding that its products and systems infringe the '120 Patent.

235.    Therefore, Mood Media's infringement of the '120 Patent is willful and egregious, warranting an enhancement of damages.

236.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '120 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII

## (INDUCED PATENT INFRINGEMENT OF THE '120 PATENT)

237.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

238.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '120 Patent, at least as early as the filing of this Complaint, because it knowingly

induces, aids, and directs others to use the Accused Products in a manner that infringes the '120 Patent.

239.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '120 Patent.

240.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '120 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '120 Patent.

241.    Mood Media's knowledge of the '120 Patent, combined with its ongoing use of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '120 Patent.

242.    Mood Media's actions and the manner in which the Accused Products are used in Mood Media's stores, consistent with Mood Media's instructions, demonstrate Mood Media's specific intent to induce infringement of the '120 Patent.

243.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Mood Media, one or more claims of the '120 Patent.

244.    As a direct and proximate result of Mood Media's induced infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

245.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XIII

## (DIRECT INFRINGEMENT OF THE '731 PATENT)

246.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

247.    Mood Media has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including the Accused Products.

248.    The Accused Products embody a method for obtaining an information analysis of the shopping activities of consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

249.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

250.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including store-specific promotions, coupons, advertising, and purchase options.

251.    The Accused Products allow Mood Media to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

252.    Mood Media has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

253.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

254.    Mood Media's infringing activities are and have been without authority or license under the '731 Patent.

255.    As a direct and proximate result of Mood Media's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

256.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media has been aware of the '731 Patent and its infringement thereof. Despite this knowledge, Mood Media has continued to make, use, sell, and offer for sale the Accused Products.

257.    Alpha Modus is informed and believes that Mood Media knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, Mood Media has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

258.    Alpha Modus is informed and believes that Mood Media has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

259.    Therefore, Mood Media's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

260.    As such, Mood Media has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIV

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

261.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

262.    Mood Media is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

263.    Mood Media's customers have utilized the Accused Products in various industries including in retail stores, which practice the patented methods of the '731 Patent.

264.    Mood Media's use of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. Mood Media encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

265.    Mood Media's knowledge of the '731 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Mood Media's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent.

266.    Mood Media's actions and the manner in which the Accused Products are used by Mood Media's customers, consistent with Mood Media's instructions, demonstrate Mood Media's specific intent to induce infringement of the '731 Patent.

267.    Alpha Modus is informed and believes, and on that basis alleges, that Mood Media knew or was willfully blind to the fact that it was inducing others, including its customers and

staff, to infringe by practicing, either themselves or in conjunction with Mood Media, one or more claims of the '731 Patent.

268.    As a direct and proximate result of Mood Media's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

269.    Alpha Modus is entitled to recover from Mood Media compensation in the form of monetary damages suffered as a result of Mood Media's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against Mood Media as follows:

(A)    An entry of judgment that Mood Media has infringed and is directly infringing one or more claims of each of '571 Patent, the '825 Patent, the '550 Patent, the '890 Patent, the '880 Patent, the '120 Patent, and the '731 Patent;

(B)    An entry of judgment that Mood Media has infringed and is indirectly infringing one or more claims of each of the '571 Patent, the '825 Patent, the '550 Patent, the '890 Patent, the '880 Patent, the '120 Patent, and the '731 Patent;

(C)    An entry of judgment that the '571 Patent, the '825 Patent, the '550 Patent, the '890 Patent, the '880 Patent, the '120 Patent, and the '731 Patent;

(D)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Mood Media, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation

with it, from further acts of infringement of the '571 Patent, the '825 Patent, the '550 Patent, the '890 Patent, the '880 Patent, the '120 Patent, and the '731 Patent;

(E)  An order awarding damages sufficient to compensate Alpha Modus for Mood Media's infringement of the '571 Patent, the '825 Patent, the '550 Patent, the '890 Patent, the '880 Patent, the '120 Patent, and the '731 Patent, but in no event less than a reasonable royalty, together with interest and costs;

(F)  A determination that damages against Mood Media are available under 35 U.S.C. § 154(d);

(G)  A determination that Mood Media's infringement has been willful, wanton, deliberate, and egregious;

(H)  A determination that the damages against Mood Media be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(I)  A finding that this case against Mood Media is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(J)  An accounting of all infringing sales and revenues of Mood Media, together with post judgment interest and prejudgment interest from the first date of infringement of the '571 Patent, the '825 Patent, the '550 Patent, the '890 Patent, the '880 Patent, the '120 Patent, and the '731 Patent; and

(K)  Such further and other relief as the Court may deem proper and just.

Dated: September 18, 2025

Respectfully submitted,

*/s/ Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com

PRINCE LOBEL TYPE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel: (617) 456-8000

*Attorneys for Plaintiff Alpha Modus, Corp.*